**Frederick I. Judson and Thomas E. Gillespie, Guardian ad Litem, Defendant in Error, v. First Trust and Savings Bank of Springfield, Illinois, and L. F. McCullough, Plaintiffs in Error.**

## Gen. No. 7,826.

1. EQUITY—*right of complainant to dismiss bill.* The rule that the right to dismiss a bill is absolute in all cases where there is no cross-bill filed is subject to the exception that where an accounting is the basis of the action, a defendant may have affirmative relief without filing a cross-bill and is entitled to object to dismissal.

2. EQUITY—*affirmative relief to defendant without cross-bill.* Whenever there is a decree to account or the pleadings, by admissions, make an accounting necessary, the defendant may have the affirmative relief upon the account, upon answer, without cross-bill filed.

3. GUARDIANS AD LITEM AND NEXT FRIENDS—*propriety of allowance to guardian ad litem without proof.* It was error to make an allowance to a guardian *ad litem* in the amount of $150 without proofs offered to support the charge.

4. COSTS—*propriety of imposition upon defendant after dismissal of bill.* Where bill by beneficiary of spendthrift trust was dismissed on motion of the complainant at costs of the complainant, court erred in then proceeding to take jurisdiction of matters set out in the bill of complaint and ordering one of the defendants as trustee to pay the costs of the proceeding including the guardian *ad litem* fee.

5. TRUSTS—*costs of suit by beneficiary held not chargeable to*

*estate.* In suit by beneficiary of spendthrift trust involving accounts of general trustee and supervising and disbursing trustee, held that the record was barren of any inference or suggestion appealing to a court of equity upon which costs incurred by complainant should be chargeable to the estate, suit having been dismissed on application by the complainant.

Error by defendants to the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding. Heard in this court at the April term, 1925. Reversed and remanded with directions. Opinion filed October 27, 1925. Rehearing denied December 16, 1925.

BANGS & FRANKHAUSER, for plaintiffs in error.

JACOB LEVY, for defendant in error.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

On the 19th day of December, 1923, the defendant in error, Frederick I. Judson, filed his bill of complaint in the Sangamon county circuit court to construe the last will and the codicil thereto of Juliet E. Jones, deceased, to remove the plaintiff in error, L. F. McCullough, as supervising and disbursing trustee under said will and codicil, and for an accounting, making the First Trust and Savings Bank of Springfield, Illinois, and said L. F. McCullough defendants thereto.

The complainant among other things alleges that one Juliet E. Jones, deceased, by her last will and codicil, duly probated, created a spendthrift trust for the benefit of Frederick I. Judson, the defendant in error, with the First Trust and Savings Bank of Springfield, general trustee, and Charles B. Ayers, supervising and disbursing trustee, and with L. F. McCullough, plaintiff in error, as his successor, and that the trust estate amounted to approximately the sum of $44,000, and the income therefrom to approximately the sum of $2,000 a year; that Charles B. Ayers died about September 1, 1920, and that the said L.

F. McCullough then succeeded said Charles B. Ayers as such supervising and disbursing trustee, and has been acting as such since that time; that the said L. F. McCullough since September 1, 1920, received the entire income from said estate, paid out a portion thereof to and for the benefit of said Frederick I. Judson, and appropriated a large portion of the said income to his own use.

The said last will provides in part as follows:

"I give, devise and bequeath to the First Trust and Savings Bank, of Springfield, Illinois, a corporation of the State of Illinois, as trustee and in trust for the purposes hereinafter set forth, all the estate, real and personal, which I may own at my death, with full power to convert into money any and all such estate that may not be in income bearing securities at the time of my death.   *   *   *

"I desire the income to be used for the support and maintenance of my beloved son Frederick I. Judson, either by direct expenditure by the trustee for him or by payment into his hands in weekly or monthly installments in person and not upon any verbal or written order by my said son, nor upon any assignment, and I direct that my son shall have no power to sell, mortgage or otherwise encumber any interest in the said estate or the income thereof nor to give any assignment or order for the proceeds thereof or the income thereof, but the said sales, mortgages, encumbrances, assignments and orders shall be absolutely null and void and the trustee shall not pay any money on account thereof and the estate so held in trust or the income thereof shall not be subject to any attachment, garnishment, creditor's bill or legal or equitable process for the collection of any debt or damages against my said son."

And the said codicil provided in part as follows:

"It is my further request that my nephew, Charles B. Ayers, shall have personal supervision of my beloved son Frederick I. Judson to receive from the trustee the monthly allowance provided for and account for same by proper receipts for money and

534    APPELLATE COURTS OF ILLINOIS.

Judson et al. v. First Trust & Sav. Bk. et al., 238 Ill. App. 531.

vouchers for supplies purchased and in case of the death of said Charles B. Ayers, then it is my wish that same arrangements be continued by L. F. Mc-Cullough, son-in-law of my said nephew Charles B. Ayers. In other respects I confirm said will.''

Plaintiff in error, First Trust and Savings Bank of Springfield, Illinois, appeared in said cause and filed its answer admitting the making of the said will and codicil, and the bequeathing of the property therein mentioned, in trust; that the will and codicil were admitted to probate, and it appointed executor and took possession of the $44,000-trust estate, and then had it on hand, and that the income therefrom approximates $2,000 annually; that Charles B. Ayers died September 1, 1920, and that since then said L. F. McCullough has been paid, by it, the proceeds and income of said trust estate, excepting about $600, for the benefit of the said Frederick I. Judson; states that on account of the mental incapacity of said Frederick I. Judson it believed it was justified in considering an extraordinary need had arisen, and in pursuance thereof so paid the entire income arising from said trust fund; admits that said L. F. McCullough has furnished to it as trustee various vouchers and bills in order to secure from it the income from said trust estate, but has no knowledge as to whether or not the vouchers represented actual expenditures by Mc-Cullough.

Plaintiff in error, L. F. McCullough, appeared and filed his answer which admits the execution of the will and codicil and its probate; admits that Charles B. Ayers died about September 1, 1920; that from time to time since then said First Trust and Savings Bank as trustee has paid to him money out of the income of said trust estate, to be applied to the benefit of complainant; denies that he has in any manner or to any extent misappropriated any of such money, but that he has used it all for the benefit of said Frederick I. Judson; and goes into some detail as to his

trusteeship and expenditure of the money; admits that he has furnished the said First Trust and Savings Bank various vouchers, bills, etc., of expenditures by him of the income paid to him; denies that said vouchers, bills, etc., did not represent actual expenditures made by him for the benefit of the said Frederick I. Judson; and denies that he secured from said First Trust and Savings Bank any money, in equity or otherwise, belonging to the said Frederick I. Judson which he has kept and appropriated to his own use, but states the fact to be that for all vouchers, bills, etc., he has made actual expenditures for and on behalf of the said Frederick I. Judson; denies that he at any time neglected or refused to advance for the use of said Frederick I. Judson any funds that he received from said trust estate; denies that he has failed to use the income of said trust estate, so far as the same came to him, for the benefit of the said Frederick I. Judson; states that the said Frederick I. Judson is a person of unsound mind and incompetent.

Replications were filed and the court appointed one Thomas E. Gillespie guardian *ad litem* for the said Frederick I. Judson, and referred the cause to a master in chancery of that court to take evidence in the matters in issue in the original bill and report the same, together with his conclusions thereon, to the court.

On the 12th day of May, 1924, the said defendant in error and his guardian *ad litem* filed a petition to set aside the order appointing the guardian *ad litem,* and for an order on the said First Trust and Savings Bank to pay money into court for the use of the said Frederick I. Judson *pendente lite,* and on the 13th day of May, 1924, the court referred said petition to the master in chancery, with the matter then before the master; and on hearing before the master in chancery testimony was heard on the issues involved (including an accounting) and exhibits, vouchers, etc., in-

536     APPELLATE COURTS OF ILLINOIS.

Judson et al. v. First Trust & Sav. Bk. et al., 238 Ill. App. 531.

troduced in evidence. On the 21st day of June, 1924, on motion of defendant in error and his guardian *ad litem,* without notice to the defendants, and in their absence, the court dismissed the suit, at the complainant's costs, and entered the following order: that the suit be dismissed upon complainant's motion and at complainant's costs; that the guardian *ad litem's* fee be fixed at $150 and it was ordered that plaintiff in error, the First Trust and Savings Bank, pay the costs of the case, including the guardian *ad litem's* fee, to the clerk of the court out of the income fund in its hands, and it was further ordered that the complainant, Frederick I. Judson, have leave to withdraw the record of evidence taken before the master and that the parties filing exhibits have leave to withdraw the exhibits respectively. The costs of the case aggregated $869.28. Plaintiffs in error have brought the record to this court on a writ of error and assign error.

Two principal questions are raised by plaintiffs in error and there is error assigned upon each: First, did the court below have authority to permit defendant in error to dismiss his bill of complaint, based upon an accounting; and second, was it error to decree the payment of costs to be paid out of a spendthrift trust, upon dismissal of the bill.

Defendant in error contends that the right to dismiss a bill is absolute in all cases where there is no cross-bill filed. There seems to be an exception to this rule. In a case where an accounting is the basis of the action, a defendant may have affirmative relief upon the account without filing a cross-bill, and the action is construed as if each was a party in the bill against the other. *Acme Copying Co. v. McLure,* 41 Ill. App. 397; *Thomas v. Turner,* 157 Ill. App. 21; *Clinton v. Winnard,* 135 Ill. App. 278; *Iglehart v. Crane & Wesson,* 42 Ill. 271; *Nyburg v. Pearce,* 85 Ill. 393; *Atkinson v. Cash,* 79 Ill. 53, and *Metzger v. Emmel,* 289 Ill. 59.

Whenever there is a decree to account or the plead-

ings, by admissions, make an accounting necessary, the defendant may have the affirmative relief upon the account, upon answer, without cross-bill filed. There is an exception to the rule in equity that "in the absence of a cross-bill the complainant has the right, on the payment of costs, to dismiss his bill at any time before final decree," when the proceeding to account has reached the stage when the parties have been ordered to account to each other. *Wilcoxon v. Wilcoxon,* 111 Ill. App. 90.

In *Atkinson v. Cash, supra,* the court held: "The fact that no cross-bill was filed by the Earnshaws can make no difference. A court of equity has the power on a bill to settle a copartnership matter of this character, to render such a decree as the equity of the case may require." And the rule extends to the settlement of accounts between principal and agent. *Atkinson v. Cash, supra.*

It was held in *Thomas v. Turner, supra* (p. 21):

"It is claimed however, by appellant, that Vogt is not entitled in this suit to any decree granting him affirmative relief for the reason that he filed no cross-bill asking for the same but relied entirely upon his answer. Appellant by his bill prayed for an accounting, claiming there was a balance due him, while Vogt, by his answer, claimed there was a balance due him from appellant. It is a universal rule that upon a bill in equity for an accounting, the party against whom the balance is found will be decreed to pay it and that no cross-bill is necessary. *Acme Copying Co. v. McLure,* 41 Ill. App. 397; *Clinton v. Winnard,* 135 Ill. App. 274; *Atkinson v. Cash,* 79 Ill. 53."

This we conclude is the universal rule and applicable to this case. In *Wilcoxon v. Wilcoxon, supra,* the court held:

"It is a general rule of equity practice in this State that where no cross-bill has been filed, complainant has the right, at any time before final decree, to dismiss his bill upon payment of costs. The rule pre-

vailing in some jurisdictions, that a chancellor may at his discretion refuse to allow complainant to dismiss his bill where such action is likely to work a hardship to defendant, is not recognized or followed in this State. *Reilly v. Reilly,* 139 Ill. 180; *Langlois v. Matthiessen,* 155 Ill. 230; *Bates v. Skidmore,* 170 Ill. 234. But a bill for an accounting which has reached a decree that the parties do account with each other, must be regarded as an exception to the general rule. In such a suit, a defendant need not file a cross-bill to entitle him to a decree in his favor for any sum that may be found due him from the complainants or from a codefendant. *Atkinson v. Cash,* 79 Ill. 53; *Nyburg v. Pearce,* 85 Ill. 393. In speaking of the record before us, the Supreme Court in *Wilcoxon v. Wilcoxon,* 199 Ill. 244, said:

" 'If the accounting, when taken in pursuance of the scope and prayer of the bill, shows the complainant to be indebted to the defendant, whom he has brought into court for the purpose of having the accounts between them judicially investigated and adjusted, the court will decree payment by the complainant to the defendant accordingly, and that without a cross-bill on the part of the defendant. The benefit of the prayer of the bill is extended to the defendant as well as to the complainant, as to all matters within the scope of the bill. The bill praying an accounting implies an offer to pay whatever, if anything, should be found due from the complainant to the defendants. In bills in equity for the dissolution of copartnerships and for an accounting between the partners as to the partnership affairs, all the partners are regarded as actors, and the accounts between them as partners are stated and the rights of each partner determined and enforced in the same manner, whether appearing as complainant or defendant in the pleadings.' "

And it was further held in *Wilcoxon v. Wilcoxon, supra:*

"The rule that a defendant to a bill for an accounting need not file a cross-bill in order to entitle him to relief by decree in his favor, if the statement of the account shows complainant indebted to him, would be a

mere mockery if complainant could dismiss at his own pleasure at any time before the result of the account in defendant's favor has been embodied in a final decree. Self-interest would impel a complainant to dismiss his bill as soon as he discovered from the state of the proofs that the result would be against him. In the present case the bill was filed in 1890, and alleges that the partnership transactions ceased about March 1, 1888. If the dismissal of this bill is sustained it may well be that the statute of limitations would bar a suit by defendant against complainants for an accounting and settlement of the partnership affairs. Defendant having by the decree to account obtained the position of an actor, entitled to an affirmative decree in his favor if the accounting should justify it, ought not without his consent to be deprived of that position and subjected to the risk of being defeated by the statute of limitations in any suit he might hereafter bring concerning the same matter.''

It is strenuously insisted that the rule laid down in *Wilcoxon v. Wilcoxon, supra,* is not the law applicable to this case for the reason that plaintiff in error by answer did not pray for an accounting, and that, even if plaintiff in error had expended his own funds in behalf of defendant in error, in addition to the income of the estate, and had improperly advanced moneys to defendant in error, as charged in the answer, yet he, plaintiff in error, could not recover, ''as he could not be permitted to do what a stranger could not do, namely, obligate defendant in error beyond the terms of the spendthrift trust.'' As to the answer, it may contain no specific prayer for affirmative relief by plaintiff in error. Such a prayer is not required. Plaintiff in error, by his answer, admitted such facts of the bill of complaint that made an accounting necessary. The answer denied the misappropriation of any of the funds or income, and specially averred how the funds had been expended, and plaintiff in error averred that in addition thereto he had advanced large sums of money of his own for

the care and support of defendant in error. Affirmative relief to the defendant upon answer in such a case is not based upon the prayer in the answer but upon the prayer in complainant's bill of complaint, by which complainant impliedly obligates himself that in praying for equity he will do equity.

In the master's report submitted to the parties before the dismissal of the cause, it was found that plaintiff in error, McCullough, had received in income from the trustee of said estate the sum of $6,824.14 and had accounted before the master for the expenditure of the sum of $7,069.56 for the care, maintenance, use and benefit of defendant in error. This was not properly a part of the record in this case and we have considered it only as a matter of illustration. Whether plain-. tiff in error under the terms of the will could charge the trust fund for advancements, we are not called upon in this case to decide. Whether plaintiff in error, in any event, could have affirmative relief in this cause for a decree against defendant in error, or the fund, is not the only question at issue. Plaintiff in error was called upon to account and an accounting has been had, in pursuance of said bill of complaint, before the master. Plaintiff in error is entitled to the benefit or result of that accounting, at least to the extent that he received and expended funds from the estate as though he had filed a cross-bill and the court below was in error in permitting said cause to be dismissed without the consent of plaintiffs in error. An allowance was made to the guardian *ad litem* in the amount of $150 without any proofs offered to support the charge. This was error. *Wright v. Upson,* 303 Ill. 146. In the decree the court ordered the bill dismissed at the costs of the complainant and then proceeded to take jurisdiction of the matters set out in the bill of complaint and ordered plaintiff in error, the First Trust and Savings Bank, as trustee under the will, to pay the costs of the proceeding, including the guardian *ad litem* fee, amounting to the

sum of $869.28. This was error. *Prather v. Lewis,* 287 Ill. 305. The bill could not be dismissed, either without prejudice or for the want of equity, and at the same time the decree grant complainant affirmative relief based upon the allegations in the bill. With the testimony and proceedings before the master withdrawn from the record and not appearing in the record in the case, there is substantially nothing except the fee allowed the guardian *ad litem* in the record to support such a charge for costs. We would not be understood as holding that a cause could not arise, under the terms of the will in question and affecting the spendthrift trust established in behalf of defendant in error, where it would be equitable to charge the corpus or income of the estate with the costs of a proceeding instituted by defendant in error, but, so far as the record before this court is concerned, it is barren of any inference or suggestion appealing to a court of equity upon which the costs incurred by defendant in error should be chargeable to the estate. *Congress Hotel Co. v. Martin,* 312 Ill. 318. The order dismissing said cause should be vacated and the decree of the circuit court of Sangamon county reversed and the testimony and proceedings taken and had before the master in chancery refiled and the cause proceed in that court in an orderly manner. The decree of the circuit court of Sangamon county is therefore reversed and the cause remanded with directions to vacate said order of dismissal and redocket said cause, and that the testimony, proceedings and exhibits be refiled with the master in chancery and that the cause proceed.

*Reversed and remanded with directions.*